IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| LARRY FRAZIER,<br><br>Plaintiff,<br><br>v.<br><br>WEXFORD HEALTH SOURCES, INC., CGH MEDICAL CENTER, DR. MERRILL ZAHTZ, LYNN CHATTIC, and JENNI BRAUER<br><br>Defendants. | Case No. 3:19-cv-50121<br><br>Honorable Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Larry Frazier is an inmate at Dixon Correctional Center (DCC). He brings this action under 42 U.S.C. § 1983 against Wexford Health Sources ("Wexford"), Dr. Merrill Zahtz, and Nurses Lynn Chattic and Jenni Brauer for allegedly violating his rights under the Eighth Amendment. He also brings a state law medical malpractice claim against CGH Medical Center. Wexford, Dr. Zahtz, and CGH Medical Center (CGH) have all moved to dismiss Frazier's claims. The nurses, however, have not.

**I. Background**

In May 2017, Larry Frazier underwent a surgical procedure at CGH Medical Center.[1] Dkt. 84, ¶ 12. This procedure included electrocautery.[2] *Id.* That procedure

---

[1] The facts are taken from the amended complaint. Dkt. 84.
[2] Electrocautery is the "cauterization of tissue by means of an instrument heated by an electric current." *Electrocautery*, Merriam-Webster Dictionary, https://www.merriam-

1

requires the use of a grounding pad placed on the patient's body, the improper placement of which can result in severe burning to the place of contact. *Id.* ¶ 14. Frazier alleges that the CGH medical staff negligently placed the grounding pad on Frazier's lower back and that this negligent placement caused third-degree burns. *Id.* ¶ 15. He continues that "the CGH Surgical Staff failed to notice, document, or treat the 3rd degree burn suffered at the site of the grounding pad," and that they returned him to DCC without treating the burn. *Id.* ¶ 16.

On June 6, 2017, Frazier began experiencing pain, itching, and discoloration of the area of skin where the grounding pad was placed; the discoloration formed a perfect square. *Id.* ¶ 17. Two days later, on June 8, 2017, Frazier received medical treatment at DCC for the burn. The medical staff at DCC, including Nurse Chattic, identified the injury as a rash despite this discoloration forming a perfect geometric shape. *Id.* ¶ 18. The next day, Frazier—continuing to experience pain—again sought treatment at the medical clinic. There, the medical staff, along with Nurse Brauer, noted the four inch by four inch square discoloration on Frazier's back, again diagnosed it as a rash (fungal infection), and prescribed hydrocortisone cream. *Id.* ¶ 19–20. The injury continued to worsen. *Id.* ¶ 20.

Two weeks later, on June 23, 2017, Nurse Practitioner Susan O'Toole (not named as a defendant) identified the injury as a burn from the grounding pad and prescribed Silvadene cream. *Id.* ¶ 21. Despite this allegedly correct diagnosis, the next several months brought an increase in pain. Frazier alleges that the burn

---

webster.com/dictionary/electrocautery (last visited Mar. 23, 2021); *see also Stedman's Medical Dictionary* (27th ed. 2000).

2

became infected and grew in size because of the poor treatment offered at the DCC medical clinic. *Id.* ¶ 22. Dr. Zahtz examined Frazier in December 2017 and diagnosed cellulitis in January 2018.[3] *Id.* ¶ 23. This appears to be the first time Dr. Zahtz examined Frazier. *See id.* (using the phrase "finally seen"). Frazier's injury then ulcerated. Cultures showed that it had become infected with Methicillin-resistant Staphylococcus Aureus (MRSA). *Id.* ¶ 24. Still, he was not referred for further treatment until March 8, 2018, when he was sent back to CGH for a biopsy and for them to treat the infected burn. *Id.* ¶ 25. Frazier was then referred to CGH's wound clinic starting in April 2018, when he began weekly treatment. *Id.* ¶ 26.

In October 2018, Frazier underwent a skin graft procedure to treat the burn. *Id.* ¶ 27. The next day, the DCC medical clinic allegedly treated the wound from the skin graft improperly by causing the patch to be removed and the entire graft to be pulled off the wound. *Id.* ¶ 28. The skin graft then failed. *Id.* ¶ 29. Frazier alleges that he continues to experience pain and neuropathy as result of the injury. *Id.* ¶ 31.

Counts I, II, and III of Frazier's complaint allege that Wexford, Dr. Zahtz, and Nurses Chattic and Brauer violated his rights under the Eighth Amendment. Count IV alleges a medical malpractice claim against CGH due to the alleged negligence of their medical staff. All defendants, except the nurses, move to dismiss Frazer's complaint.

---

[3] Cellulitis is "diffuse and especially subcutaneous inflammation of connective tissue." *Cellulitis*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/cellulitis (last visited Mar. 23, 2021); *see also Stedman's Medical Dictionary* (27th ed. 2000)

## II. Analysis

To defeat a motion to dismiss, the plaintiff must have alleged facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This means that a plaintiff's well-pleaded factual allegations must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 566 U.S. 622, 678 (2009). The Court accepts as true all of the plaintiff's well-pleaded allegations and views them in the light most favorable to the plaintiff. *Landmark Am. Ins. Co. v. Deerfield Constr., Inc.*, 933 F.3d 806, 809 (7th Cir. 2019). The burden of persuasion on a motion to dismiss rests with the defendant. *Reyes v. City of Chicago*, 585 F. Supp. 2d 1010, 1017 (N.D. Ill. 2008) ("On a motion to dismiss, defendants have the burden of demonstrating the legal insufficiency of the complaint – not the plaintiffs or the court.").

### A. Count I

In Count I, Frazier sues Wexford and Dr. Zahtz for allegedly violating his Eighth Amendment rights. Dkt. 84, at 5. Wexford moves for dismissal pursuant to Rule 12(f) on the grounds that Counts I and II are nearly identical. Dkt. 93, at 6. In response, Frazier concedes that Count I included Wexford in error. Dkt. 96, at 6. Therefore, Count I against Wexford is dismissed with prejudice.

Dr. Zahtz similarly argues that Counts I and II are identical. Dkt. 103, at 4. Frazier responds that they are not identical, that Count I "seeks to hold Plaintiff's

medical providers individually liable," and that Count II "seeks to hold Defendants liable under a theory of *respondeat superior*." Dkt. 111, at 4. Although the two counts are almost identical—with paragraph sixty being the only difference—the Court accepts Frazier's explanation and will analyze each count separately.

"Prison officials violate the prohibition on cruel and unusual punishment if they act with deliberate indifference to a prisoner's serious medical condition." *Perry v. Sims*, No. 19-1497, 2021 U.S. App. LEXIS 6165, at *8 (7th Cir. Mar. 3, 2021). This means that a defendant is only liable when they have (1) knowledge of a serious medical condition, (2) knowledge of a substantial risk stemming from that condition, and (3) fail "to take reasonable measures to mitigate the risk." *Id.* at *9. Courts in this circuit look at the totality of medical care provided by the defendant to determine if that care, or lack thereof, evidences deliberate indifference. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). But a plaintiff must allege how that defendant was personally involved in causing the constitutional deprivation. *Minix v. Canarecci*, 597 F.3d. 824, 833 (7th Cir. 2010).

Furthermore, "deliberate indifference is more than gross negligence or even malpractice, and requires establishing that the defendants exhibited a serious lack of concern for the plaintiff's welfare." *Suleiman v. Wexford Health Sources, Inc.*, No. 18-cv-50007, 2021 U.S. Dist. LEXIS 55128, at *9 (N.D. Ill. Mar. 24, 2021) (citing *Rosario v. Brawn*, 670 F.3d 816, 821–22 (7th Cir. 2012)).

Frazier alleges that Dr. Zahtz failed to diagnose the burn and instead believed it to be a rash, failed to treat the burn properly as a result, failed to refer

5

Frazier to specialists, failed to prevent the burn from becoming infected, and failed to properly treat the skin graft. Dkt. 84, ¶40; Dkt. 111, at 4.

Frazier alleges that he was not examined by Dr. Zahtz until December 2017. Dkt. 84, ¶ 23 ("In December of 2017, Plaintiff was finally seen by the onsite medical doctor, Defendant Zahtz, who diagnosed cellulitis in January of 2018."). Frazier does not allege that Dr. Zahtz was personally involved in any of his visits to the DCC medical clinic before December 2017. Frazier then alleges that the failure to properly treat the skin graft was done at the "direction and control of Wexford and/or Dr. Zahtz." He alleges no other non-conclusory facts specific to Dr. Zahtz.

These allegations are insufficient for multiple reasons. For much of the alleged timeline, Dr. Zahtz was not personally involved. Notwithstanding Frazier's allegation that Dr. Zahtz misdiagnosed the burn, Frazier alleges that Dr. Zahtz did not examine him until December 2017—six months after the burn was allegedly misdiagnosed as a rash. Dkt. 84, ¶¶ 18–19.

Even if Dr. Zahtz has supervisory authority over the Defendant Nurses, who were allegedly involved when the burn was misdiagnosed and mistreated, Frazier fails to allege that Dr. Zahtz knew of Frazier's situation or condoned the actions of Nurses Chattic and Brauer. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (explaining that supervisors are not personally involved in the constitutional deprivation unless they knew about the conduct and facilitated, approved, or condoned it, or otherwise turned a blind eye). None of Frazier's allegations satisfy the requirements explained in *Gentry*.

6

Lastly, Frazier's allegations, at most, describe medical malpractice or negligence. But that is not the same as deliberate indifference. None of Frazier's allegations, even the list of allegations in paragraph forty, allege that Dr. Zahtz exhibited a serious lack of concern for Frazier's welfare; a standard that requires more than malpractice. *Suleiman*, 2021 U.S. Dist. LEXIS 55128, at *9 (explaining that malpractice is not sufficient to establish deliberate indifference). Thus, Dr. Zahtz motion to dismiss is granted. At this point, however, the dismissal is without prejudice.

**B. Count II**

Frazier sues Wexford and Dr. Zahtz in Count II on a theory of respondeat superior. Dkt. 84, at 7; Dkt. 96, at 5–6; Dkt. 111, at 4 ("Count II seeks to hold Defendants liable under the theory of *respondeat superior*, seeking a good-faith effort to see the possible reversal of existing law."). Thus, Frazier concedes that he seeks reversal of existing law; relief this Court cannot provide. As other courts have noted, Frazier will have to take that up with the Seventh Circuit. *Daugherty v. McClusky*, No. 3:18-cv-50058, 2021 U.S. Dist. LEXIS 46358, at *13–14 (N.D. Ill. March 12, 2021). This Court has no choice but to dismiss Frazier's claim. *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014) ("Respondeat superior liability does not apply to private corporations under § 1983."). Therefore, the Court grants Dr. Zahtz and Wexford's motion to dismiss Count II. Because this Court is bound by *Shields*, the dismissal is with prejudice.

**C. Count III**

In Count III, Frazier next sues Wexford and Dr. Zahtz under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, (1978). Dkt. 84, at 10. Both move the Court to dismiss Count III.

Dr. Zahtz first contends that his inclusion in Frazier's *Monell* claim is redundant because Frazier has also sued Wexford, the company for which Zahtz was allegedly acting as an agent.[4]

Official capacity suits against an employee or agent of a government entity are effectively a suit against that government entity itself. *Kentucky. v. Graham*, 473 U.S. 159, 166 (1985) (explaining that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"). This is also true when a private corporation is sued under § 1983. Thus, the inclusion of the individual defendant in that person's official capacity, is redundant and unnecessary. Therefore, Courts in this district routinely dismiss official capacity claims against the employees or agents of a company when that company is included in the claim. *E.g.*, *Williams v. Wexford*, No. 17-cv-05076, 2020 U.S. Dist. LEXIS 92998, at *27–28 (N.D. Ill. May 28, 2020). The few circuit courts that have discussed this issue have agreed. *J.H. v. Williamson Cnty.*, 951 F.3d 709, 723 n.4 (6th Cir. 2020); *Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008);

---

[4] Frazier's response to Zahtz's argument is not clear. He seems to make a distinction between whether Dr. Zahtz had policymaking authority or not. But if that is what he means to argue, that distinction is irrelevant, and Frazier cites no authority to the contrary. Dkt. 111, at 3–4.

8

*Ham v. Pennington Cnty. Bd. of Comm'rs*, 158 F. App'x 761, 762 (8th Cir. 2005) (per curium). Thus, Dr. Zahtz's motion to dismiss Count III against him is granted.

Wexford also moves this Court to dismiss Frazier's claim under *Monell*, 436 U.S. at 658. Dkt. 93, at 2–5. In support of its motion, Wexford contends that Frazier has not pleaded sufficient facts to establish that a custom or policy existed that violated his Eighth Amendment rights. *Id.* at 3. Wexford also contends that Frazier has failed to allege any widespread conduct, such that the custom or policy affected other inmates. *Id.* at 4. Frazier responds that his "pleading burden is commensurate with the amount of information available" and that he "is not expected to plead facts that are not accessible without discovery." Dkt. 96, at 3. Thus, he argues that his conclusory allegation that "a pattern and practice of not referring prisoners to outside medical professionals in order to reduce Wexford's costs despite the seriousness of his injury" is sufficient to defeat a motion to dismiss. *Id.*

Under *Monell*, liability may lie in three circumstances: (1) the defendant employs an express policy that causes the constitutional injury, (2) the defendant has established a widespread practice that is so well settled that it constitutes a custom or usage, or (3) the defendant has final policymaking authority and has caused the constitutional injury. *McCormick v. City of Chi.*, 230 F.3d 319, 324 (7th Cir. 2000). Furthermore, the allege policy or practice must be the "direct cause or moving force behind the constitutional violation." *Woodward v. Corr. Med. Servs.*, 368 F.3d 917, 927 (7th Cir. 2004).

9

Although plaintiffs must plead enough facts to make their claim plausible, such that it raises the inference of liability, the Supreme Court has clearly held "that federal courts must not apply a heightened pleading standard" to *Monell* claims. *McCormick*, 230 F.3d at 323. Furthermore, the Seventh Circuit has explained that a plaintiff need not plead facts that are unavailable without the aid of discovery. *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 768 F.3d 510, 529 (7th Cir. 2015) ("We cannot expect, nor does Federal Rule of Civil Procedure 8 require, a plaintiff to plead information she could not access without discovery.").

But to allege a widespread policy that caused a constitutional injury, a plaintiff must allege circumstances demonstrating that the defendant policymaker was deliberately indifferent to the obvious consequence of their policy or failure to create a policy. *Barwicks v. Dart*, No. 14-cv-8791, 2016 U.S. Dist. LEXIS 80958, at *6 (N.D. Ill. June 22, 2016). To be sure, that requirement is easier to satisfy when a plaintiff alleges multiple constitutional violations as evidence that the individuals were acting pursuant to a custom. At a minimum, a plaintiff must include factual allegations such that the Court can make the plausible inference that such a custom exists. *Twombly* at least requires that. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Hamilton v. Oswego Cmty. Unit Sch. Dist. 308*, No. 20 C 0292, 2021 U.S. Dist. LEXIS 36408, at *27 (N.D. Ill. Feb. 26, 2021) ("The existence of another lawsuit is not enough to state a claim that a defendant maintains a widespread practice. Plaintiffs point to one other case, but one other case is not enough."); *Sanders v. Chi. Transit Auth.*, No. 19-cv-04656, 2020 U.S. Dist. LEXIS

10

161701, *23–24 (N.D. Ill. Sept. 3, 2020) (requiring more than a bare allegation that a custom existed).

Here, Frazier has not pleaded sufficient facts to support a *Monell* claim. Assuming Frazier has stated a claim under the Eighth Amendment, he has not alleged facts that any policy, practice, or custom existed that could have been the moving force behind the constitutional injury.[5] Frazier alleges a pattern of not referring patients to outside medical providers for the purpose of reducing Wexford's costs to provide inmates with medical care. Dkt. 84, ¶¶ 44, 62. This is problematic for two reason: (1) Frazier was referred to outside specialists, and (2) Frazier has not included any facts to make this conclusory allegation plausible.

First, Frazier's serious medical condition started because he was referred to CGH Medical Center for a surgical procedure. He was again referred to CGH, who treated the wound and performed a biopsy on March 8, 2018, after Dr. Zahtz diagnosed cellulitis in January 2018. CGH's wound clinic then continued treating Frazier thereafter. Nothing in his complaint, taken as true, leads to the plausible inference that he needed other referrals or that any failure to make further referrals to outside providers was done out of a desire to save Wexford money. Furthermore, he does not allege that he requested other referrals or that any request was denied.

---

[5] Although the Court dismisses Frazier's claim that Dr. Zahtz violated his Eighth Amendment rights, Nurse Chattic and Nurse Brauer have not moved to dismiss. Because Eighth Amendment allegations still remain against some defendants, the Court rests its decision on the insufficiency of the Frazier's allegations regarding a policy, practice, or custom instead of merely dismissing due to lack of constitutional injury.

11

Second, nothing in the complaint raises an inference that any such policy, practice, or custom exists. Frazier does not allege any other instances in which Wexford has chosen to save money instead of providing inmates with necessary referrals. He also alleges no facts that imply such a custom exists. *Cf. Daugherty v. McClusky*, 3:18-cv-50088, 2021 U.S. Dist. LEXIS 46358, at *30–32 (N.D. Ill. Mar. 12, 2021) (denying a motion to dismiss the *Monell* claim because the plaintiff alleged the existence of a waitlist and attached standard form memoranda implying that being placed on a waitlist was common but alleged no other actual instances). Instead, Frazier merely speculates that such a custom exists. *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

Therefore, the Court must grant Wexford's motion to dismiss Frazier's *Monell* claim, but it does so without prejudice. The Court will allow Frazier another opportunity to allege sufficient facts.

**D. Count IV**

Lastly, in Count IV, Frazier brings suit against CGH Medical Center for malpractice. Dkt. 84, at 11. CGH moves for dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. 89, at 1. In reply, CGH concedes that its argument for dismissal pursuant to Rule 12(b)(6) must fail. Dkt. 100, at 4. CGH now agrees, as Frazier points out, that its argument was foreclosed by *Young v. United States*, 942 F.3d 349 (7th Cir. 2019). Thus, the Court will only consider CGH's motion to dismiss for lack of supplemental jurisdiction.

This Court has original jurisdiction over Frazier's § 1983 claims.[6] Dkt. 84, ¶ 8; 28 U.S.C. § 1331. Frazier asserts supplemental jurisdiction for his state law malpractice claim against CGH. *Id.* Supplemental jurisdiction empowers federal courts to hear state law "claims that are so related to claims in the action with [that court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367. This requires that the state and federal claims share a "common nucleus of operative fact." *Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008).

Thus, CGH's motion turns on whether Frazier's medical malpractice claim shares a common nucleus of operative fact with his Eighth Amendment claims. CGH argues that no such common nucleus exists and that sharing a factual background is not enough. It argues that the facts are sequentially related; the alleged malpractice caused the serious medical condition that the other defendants were allegedly deliberately indifferent toward. To illustrate this distinction, CGH recites the elements of the malpractice and Eighth Amendment claims and notes that none are the same. Frazier need not prove the cause of the serious medical need to prove an Eighth Amendment violation. But this argument misses the mark.

CGH seems to argue that facts are not operative unless they go to an element of a plaintiff's claim. Because no elements are shared, the argument goes, no common nucleus of operative fact exists even if common facts exist. This argument,

---

[6] Although the Court grants the motions before it to dismiss Frazier's § 1983 claims against Dr. Zahtz and Wexford Health Sources, Defendant Nurses Brauer and Chattic have not moved for dismissal. At this time, therefore, federal question jurisdiction remains.

13

however, fails for two reasons. First, the Seventh Circuit has made clear that "a loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chi., Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995). Here, that loose factual connection exists. These claims exist as two pieces of the same story. Second, even if the term "operative fact" did mean only facts that prove an element of the claim, CGH misses one important aspect all of these claims; damages. If Frazier were to prove claims under both the Eighth Amendment and medical malpractice, the question would then exist as to how much of the damage was caused by CGH's malpractice and how much of the damage was caused by the other defendants' indifference to Frazier serious medical need.[7]

Thus, the Court holds that the state and federal claims share a common nucleus of operative fact and retains supplement jurisdiction. CGH's motion is denied.

### III. Conclusion

For the reasons stated above, Dr. Zahtz's motion to dismiss [102] and Wexford's motion to dismiss [92] are granted. CGH's motion to dismiss [89] is denied. Frazier has until April 30, 2021, to amend the complaint and cure its

---

[7] CGH cites to *Bensen v. Cady*, 761 F.2d 335 (7th Cir. 1985). That case, like CGH argues, found no common nucleus of operative fact between a negligence claim and an Eighth Amendment violation because the Eighth Amendment claim did not require evidence of what caused the serious medical condition. *Id.* at 343–44. Still, that case precedes the "loose factual connection" language from *Houskins* and *Baer*. Furthermore, the Court has provided two reasons for retaining jurisdiction.

deficiencies. If Frazier declines to amend his complaint before the deadline, the dismissals will be with prejudice.

Date:  March 26, 2021

                                          Honorable Iain D. Johnston
                                          United States District Judge