**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| LARRY FRAZIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 19-cv-50121 |
| | ) | |
| WEXFORD HEALTH SOURCES, INC. | ) | Honorable Iain D. Johnston |
| CGH MEDICAL CENTER, MERRILL | ) | |
| ZAHTZ, MD, | ) | Magistrate Margaret J. Schneider |
| | ) | |
| Defendants. | ) | |

## *REVISED* SECOND AMENDED COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff, Larry Frazier, by and through his assigned attorney, Vincent C. Mancini, and complaining of Defendants, Wexford Health Sources, Inc., CGH Medical Center, Merrill Zahtz, MD, Plaintiff states as follows:

### Parties

1. Plaintiff is an inmate of the Illinois Department of Corrections and housed at Dixon Correctional Center, Dixon, Illinois.

2. Defendant, Wexford Health Sources, Inc., is a Florida corporation authorized to do business in Illinois and is engaged in the business of providing healthcare professionals and services to correctional facilities in Illinois, including Dixon Correctional Center. On information and belief, Defendant Wexford is a contractor to the Illinois Department of Corrections, and in this capacity, promulgates rules, regulations, policies, and procedures for medical diagnosis and treatment of inmates at Dixon Correctional, including Plaintiff.

3. Defendant, CGH Medical Center, is a hospital licensed by Illinois and located in Sterling, Whiteside County, Illinois.

4. Defendant, Merrill Zahtz, is a physician licensed to practice medicine in Illinois who provides health and medical services to prisoners of Dixon Correctional, including Plaintiff, as an employee and/or authorized agent of Defendant Wexford overseeing the medical services provided and staff working at Dixon ("Medical Director").

## Venue

5. Defendants acted under color of state law to deprive Plaintiff of his constitutional rights, as set forth below.

6. This Court has jurisdiction under 28 U.S.C. §1331, §1343, and §1367 and 42 U.S.C. §1983.

7. Venue is proper under 28 U.S.C. §1391(b) because (1) the Defendants reside or do business within the Northern District of Illinois, Western Division, and (2) a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## Facts

8. Plaintiff's only access to medical care is through the prison healthcare system operated by Defendant Wexford.

9. Defendant Wexford utilized a system in which it employed or contracted with physicians and/or nurses and/or nurse practitioners to provide medical services to inmates of Dixon Correctional, including Plaintiff. The physicians, nurses and/or nurse practitioners could not refer an inmate for specialty care without Defendant Wexford's permission.

10. On or about May 18, 2017, Plaintiff underwent a surgical procedure at Defendant, CGH Medical Center, wherein electrocautery was utilized.

11. Plaintiff's surgical procedure was supervised and/or performed by Dr. Kermit Cox and Dr. Thomas King, along with nurse Anja McNeill ("CGH Surgical Staff"). At the time of surgery, the CGH Surgical Staff were employees and/or apparent agents of Defendant CGH

and/or held themselves out as employees and/or agents of CGH.

12. Electrocautery requires the placement of a grounding pad on the patient's body. Improper placement of the pad can result in a severe burn to the patient's body at the site of where the pad was placed.

13. Under the direct supervision of the CGH Surgical Staff, the grounding pad affixed to Plaintiff's lower back in advance of surgery was done in a negligent way so as to cause Plaintiff to suffer a 3rd degree burn to his body where the pad was placed..

14. Following the surgery at CGH, the CGH Surgical Staff failed to notice, document, or treat the 3rd degree burn suffered at the site of the grounding pad. Plaintiff was returned to Dixon Correctional facility without any medical treatment plan for the burn.

15. On or about June 6, 2017, Plaintiff experienced pain, itching, and discoloration of the skin where the pad was placed. This area of the skin formed a perfect square/rectangle area on Plaintiff's lower back.

16. On June 8, 2017, Plaintiff received medical treatment at Dixon Correctional for the injury to his lower back. Upon inspection by medical professionals, Plaintiff was diagnosed with a rash despite the area forming a perfect square/rectangle and was provided no care to address the burn.

17. In fact, Plaintiff suffered a 3rd degree burn on his lower back.

18. On June 9, 2017, Plaintiff was continuing to experience pain in the area of the 3rd degree burn and was received medical treatment at Dixon Correctional for the injury. Upon inspection by medical professionals, noted a perfect 4" x 4" square on Plaintiff's back, diagnosed this as a rash, and prescribed hydrocortisone cream as a treatment.

19. On June 23, 2017, nurse practitioner, Susan O'Toole, reviewed Plaintiff's injury, and

thought it might be a burn from the grounding pad. Silvadene cream was prescribed for the first time to treat the burn.

20. On July 5, 2017, a doctor employed by Defendant Wexford, believed to either be Dr. Zahtz or another doctor under his supervision and control as Medical Director, examined Plaintiff and noted the burn developing on his back; however, the Medical Director ordered no new treatments and made no referrals to a burn specialist for further treatment; instead, he simply scheduled a follow up examine in 6 months.

21. On July 17, 2017, Family Nurse Practitioner, Susan Tuell, who was an employee of Defendant Wexford and/or under the direct control of the Medical Director employed by Defendant Wexford, examined Plaintiff, but failed to address the burn or change treatment.

22. Plaintiff received no further or additional treatment for the 3rd degree burn and was not referred to an outside burn specialist for treatment.

23. On August 30, 2017, NP Tuell examined Plaintiff; despite the prior diagnosis of a burn, she referred to Plaintiff's burn as a "rash" and noted that a change in laundry soap may be responsible for inflaming the rash. She instructed Plaintiff to avoid a hot shower and failed to change his treatment in any way to address the 3rd degree burn.

24. Defendant Wexford and its employees demonstrated deliberate indifference to Plaintiff's medical condition by failing to properly diagnose and treat his 3rd degree burn.

25. Notably, the Medical Director employed by Defendant Wexford and overseeing the medical staff did not seek any special treatment nor a referral to a specialist for the 3rd degree burn sustained by Plaintiff.

26. Over the next several weeks, Plaintiff experienced increasing pain and suffering from the burn. The injury grew in size and became infected as a result of the lack of medical

treatment received at Dixon Correctional.

27. On September 16, 2017, Plaintiff was examined by the nurse practitioner employed by Defendant Wexford, who noted Plaintiff's increasing pain at the site of the burn. Again, however, no further diagnosis tools were employed, no additional treatment was ordered for the 3rd degree burn, and no referral to a burn specialist was recommended.

28. On September 29, 2017, a medical doctor employed by Defendant Wexford, believed to be either Dr. Zahtz or a doctor under his supervision and control as Medical Director, examined Plaintiff, noting abdomen pain and worsening pain on his lower back. However, the doctor attributed the pain to "musculoskeletal," once again either ignoring or minimizing the 3rd degree burn Plaintiff sustained to his lower back area. No additional treatment was ordered for the burn and no referral to a burn specialist was made.

29. Defendant Wexford and its employees demonstrated deliberate indifference to Plaintiff's worsening medical condition by failing to properly diagnose and treat his 3rd degree burn and by continuing to mischaracterize his injury as a "rash" or "mustculoekeletal."

30. Following the September 29, 2017, and despite Plaintiff's worsening medical condition, his medical treatment employed by Defendant Wexford and the medical staff under the supervision and direction of Dr. Zahtz did not change.

31. Plaintiff was not examined again until December 18, 2017, at which time the pain he was experiencing had grown more severe, the tissue over the burn grew "extremely hard", and the skin was cracking.

32. On December 20, 2017, NP Tuell examined Plaintiff, noting the area of the burn was hard, the skin wants to crack, and the skin was changing and now thickening of subcutaneous tissue. NP Tuell referred Plaintiff to the medical doctor for further evaluation.

33. On January 2, 2018, Dr. Zahtz examined Plaintiff, noting possible cellulitis at the site of the 3rd degree burn.

34. On January 13, 2018, Plaintiff was examined by the nurse practitioner employed by Defendant Wexford and a culture of the burn was taken.

35. On January 15, 2018, Defendant Wexford, via its employee Dr. Fisher, denied the request to perform general surgery to evaluate the burn to Plaintiff's injury.

36. During the six (6) months after being diagnosed with a 3rd degree burn, Defendant Wexford and its employees demonstrated a deliberate indifference to Plaintiff's condition by failing to properly treat the burn, failing to refer Plaintiff to a burn specialist, allowing the burn to become infected, allowing cellulitis to develop, refusing to approve a request for surgery to treat the burn, and/or ignoring Plaintiff's ever-increasing complaints of severe pain.

37. On January 29, 2018, the decision to deny the request for surgery was reversed by Defendant Wexford. However, by this time it was too late as Plaintiff already developed cellulitis and his burn had become infected with MRSA.

38. Plaintiff was not referred for further treatment of his infected burn until March 8, 2018, when he was referred to CGH to treat the wound. During this delay, the infection in Plaintiff's body continued to worsen.

39. Starting in April of 2018, Plaintiff was referred to the wound clinic at CGH for treatment of the infected wound.

40. Defendant Wexford continued to treat the wound and infection on Plaintiff's back with weekly dressing changes and referrals to the wound clinic at Defendant CGH.

41. However, as a result in the delay to properly treating Plaintiff's 3rd degree burn, he incurred an infection and sustained severe and/or permanent nerve damage to his lower back.

6

42. Plaintiff underwent a skin graft procedure to treat the wound in late October of 2018.

43. The day after the skin graft surgery, the medical staff at Dixon Correctional, under the direction and control of Defendants Wexford and/or Dr. Zahtz, improperly treated the skin graft area by causing the Tegaderm patch covering the skin graft to be removed, which caused the entire graft to be pulled off the wound.

44. In so doing, the medical staff at Dixon Correctional, which is employed and/or supervised by Defendant Wexford and/or Dr. Zahtz, caused the failure of the skin graft.

45. Today, Plaintiff continues to experience severe pain, neuropathy, and chronic problems with the wound caused by the 3rd degree burn.

46. As a result of the failure in diagnosing and unreasonable delays in properly treating Plaintiff's burn, Defendants caused Plaintiff to incur years of severe pain, infection, surgical procedures, and unresolved injury to his body leading to neuropathy with no apparent treatment for resolving his condition.

47. Plaintiff has submitted grievances related to the issues raised herein and has exhausted all administrative rights related thereto.

### Count I – Violation of 42 U.S.C. §1983 (Cruel and Unusual Punishment)

(Against Dr. Zahtz)

48. Plaintiff has a right to be free from cruel and unusual punishment under the Eighth Amendment to the Unites States Constitution.

49. Defendant Dr. Zahtz was the Medical Director with responsibility for and overseeing the treatment of prisoners, including Plaintiff, by the medical staff.

50. Plaintiff's treatment, or lack thereof, constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

51. Plaintiff's serious medical condition was obvious.

52. Defendant Dr. Zahtz, personally and via the medical staff under his supervision and control, was aware of facts from which he could infer that a substantial risk of serious harm existed based on the initial diagnosis of an electrocautery burn in July of 2017 after surgery, but disregarded that substantial risk when failing to properly treat the burn, failing to refer Plaintiff to a burn specialist, allowing Plaintiff to develop cellulitis, and/or allowing the wound to become infected with MRSA.

53. Plaintiff's medical condition was so objectively serious that the failure to provide the needed and immediate care constitutes a constitutional deprivation.

54. Plaintiff made repeated requests for medical attention.

55. Defendant possessed actual or constructive knowledge of Plaintiff's serious medical condition.

56. Defendant were aware of, yet disregarded, Plaintiff's obvious injury, pain, and suffering and need for medical attention. Defendants were deliberately indifferent to Plaintiff's repeated requests to receive proper medical attention.

57. There was no medical basis for misidentifying Plaintiff's 3rd degree burn over a 6-month period, allowing Plaintiff's tissue to degrade and become infected over that time-period.

58. Defendant's course of treatment of Plaintiff's 3rd degree burn was obviously ineffective as he sustained significant and severe injury are a result thereof.

59. In this regard, the medical treatment prescribed by Defendant and his medical staff was not the appropriate way to treat a 3rd degree, subcutaneous burn.

60. Defendant failed to provide adequate medical treatment and were deliberately indifferent to Plaintiff's medical condition in the following ways, including, but not limited to:

    a. Failing to diagnose the 3rd degree burn;

    b. Continuing to misdiagnose the 3rd degree burn as a "rash" or "musculoskeletal;"

    c. Failing to properly treat the 3rd degree burn;

    d. Failing to refer Plaintiff to medical specialists for treatment of his 3rd degree burn;

    e. Failing to prevent Plaintiff from becoming infected with MRSA; and

    f. Removing the skin graft from his wound the day after surgery.

61. Although Plaintiff was eventually referred to outside physicians after long, unreasonable delays, Defendant failed to follow basic medical standards and protocols when caring for Plaintiff following his two surgeries.

62. Due to Defendant's acts and omissions, Plaintiff was in severe and chronic pain for years, resulting from Defendant's failure to diagnose and/or treat Plaintiff's medical condition.

63. Defendant had the authority to refer Plaintiff to specialists to treat his worsening medical condition but failed to do so out of deliberate indifference.

64. As a direct and proximate cause of the Defendant's acts and omissions, Plaintiff suffered and continues to suffer prolonged pain and chronic medical problems of an on-going and continual nature, for which there appears to be no resolution.

WHEREFORE, Plaintiff, Larry Frazier, respectfully requests this Honorable Court enter a judgment in his favor and against Defendant, as follows:

    a. Compensatory and special damages in an amount to be proved at trial;

    b. Punitive damages against the individual Defendants;

    c. An order requiring Defendant to provide Plaintiff with proper medical care, including possible surgery, to treat his condition;

    d. An order enjoining Defendant, their employees, agents, successors and all other

persons in concert or participation with it from denying Plaintiff proper medical care for his condition;

e. Reasonable costs of suit, including expert fees and attorney's fees; and

f. Any and all relief this Court may deem just and appropriate.

## Count II – Violation of 42 U.S.C. §1983

## (Cruel and Unusual Punishment – Respondeat Superior)

(Against Wexford, Dr. Zahtz)

**THE COURT DISMISSED THIS COUNT WITH PREJUDICE ON MARCH 26, 2021, BUT IT IS BEING REPLEADED TO PRESERVE ANY APPELLATE RIGHTS**

65. Plaintiff restates and realleges Paragraphs 1 through 64 as Paragraph 65.

66. Plaintiff has a right to be free from cruel and unusual punishment under the Eighth Amendment to the Unites States Constitution.

67. Defendants' treatment of Plaintiff, or lack thereof, constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

68. Plaintiff's serious medical condition was obvious.

69. Plaintiff's medical condition was so objectively serious that the failure to provide the needed and immediate care constitutes a constitutional deprivation.

70. Plaintiff made repeated requests for medical attention.

71. Defendants possessed actual or constructive knowledge of Plaintiff's serious medical condition.

72. Defendants were aware of, yet disregarded, Plaintiff's obvious injury, pain, and suffering and need for medical attention. Defendants were deliberately indifferent to Plaintiff's repeated requests to receive proper medical attention.

73. Defendants failed to provide adequate medical treatment and were deliberately indifferent to Plaintiff's medical condition in the following ways, including, but not limited to:

    a. Failing to diagnose the 3rd degree burn;

    b. Failing to properly treat the 3rd degree burn;

    c. Failing to refer Plaintiff to medical specialists for treatment of his 3rd degree burn;

    d. Failing to prevent Plaintiff from becoming infected with MRSA; and

    e. Removing the skin graft from his wound the day after surgery.

74. Although Plaintiff was eventually referred to outside physicians after long, unreasonable delays, Defendants failed to follow basic medical standards and protocols when caring for Plaintiff following his two surgeries.

75. Due to Defendants' acts and omissions, Plaintiff was in severe and chronic pain for years. Defendants failed to adequately diagnose and/or treat Plaintiff's medical condition.

76. Defendants had the authority to refer Plaintiff to specialists to treat his worsening medical condition but failed to do so out of deliberate indifference.

77. As a direct and proximate cause of the Defendants' acts and omissions, Plaintiff suffered and continues to suffer prolonged pain and chronic medical problems of an on-going and continual nature, for which there appears to be no resolution.

78. On information and belief, the individual Defendants identified in this Count were employees or agents of Defendant Wexford and acting in furtherance of Wexford's contract with the State of Illinois to provide healthcare services.

WHEREFORE, Plaintiff, Larry Frazier, respectfully requests this Honorable Court enter a judgment in his favor and against Defendants, as follows:

   a. Compensatory and special damages in an amount to be proved at trial;

    b.    Punitive damages against the individual Defendants;

    c.    An order requiring Defendants to provide Plaintiff with proper medical care, including possible surgery, to treat his condition;

    d.    An order enjoining Defendants, their employees, agents, successors and all other persons in concert or participation with it from denying Plaintiff proper medical care for his condition;

    e.    Reasonable costs of suit, including expert fees and attorney's fees; and

    f.    Any and all relief this Court may deem just and appropriate.

## Count III – Violation of 42 U.S.C. §1983 (Cruel and Unusual Punishment)

(Against Wexford)

79. Plaintiff restates and realleges Paragraphs 1 through 64 as Paragraph 79.

80. Defendant maintains policies, practices, or customs of deliberate indifference toward prisoner's medical needs and/or discouraging physicians and medical staff employed by Wexford or acting in connection with Wexford from referring Dixon Correctional inmates, including Plaintiff, for medical care by others, including hospitals and specialists.

81. Defendant also maintains a policy, practice, or custom of reviewing recommendations from the Medical Director to determine whether a referral for a prisoner's medical care should be made subject to the relative costs of providing that referral, *i.e.* "Collegial Review," in order to impose an additional hurdle to overcome in order to obtain an outside referral.

82. The polices and procedures employed by Defendant have been investigated previously, as set forth in the reports issued in *Lippert, et al. v. Ghosh*, No. 1:10-CV-04603 (N.D. Ill.), wherein court-appointed experts assessed the medical care at Dixon Correctional Center.

83. The *Lippert* reports issued in 2014 and in 2018 identified numerous systemic failures in

the prison healthcare system at Dixon Correctional Center, resulting in delays related to offsite services, referrals for specialty care, and follow-up visits with inmates.

84. These systemic failures outlined in the *Lippert* reports evidence Defendant's policies and procedures which caused substantial delays in Plaintiff's treatment, namely a referral for treatment and specialty care for his 3rd degree burn, in order to save costs and expenses.

85. The policies and procedures employed by Defendant had a direct and significant impact on Plaintiff by creating unreasonable delays in treating his 3rd degree burn.

86. Defendant's employees deliberate indifference toward Plaintiff's injury includes the initial misdiagnosis of the burn, the continued misdiagnosis of a "rash" or "musculoskeletal" injury, ignoring Plaintiff's serious medical condition, the lack of proper treatment of the 3rd degree burn, the failure to refer Plaintiff to a burn specialist, and/or the cellulitis and MRS infection which was allowed developed in Plaintiff's burn.

87. Defendant ignored, misdiagnosed, and/or minimized the severity of Plaintiff's medical condition in furtherance of its policies and procedures to avoid making a referral to an outside specialist for treatment in order to minimize its costs and expenses.

88. For example, Defendant's denial of the request to refer Plaintiff for off-site treatment of his infected wound in January of 2018, further demonstrates the policies and procedures it employs, which resulted in further delays in his treatment.

89. To the extent that the deficiencies alleged herein affected may have only Plaintiff and no others, the unconstitutional consequences of those deficiencies were so patently obvious that Defendant remains liable for Plaintiff's injuries.

90. The deficiencies alleged herein were the direct cause of or the moving force behind Plaintiff's constitutional injuries.

91. Defendant had the authority to properly diagnose Plaintiff's burn, properly treat said burn, refer Plaintiff to specialists to treat said medical condition, and properly treat Plaintiff's skin graft but have failed to do so out of deliberate indifference.

92. As a direct and proximate cause of Defendants' violations of Plaintiff's Eighth Amended rights, Plaintiff suffered and continues to suffer harm, including, but not limited to, prolonged pain and suffering and permanent injury to his body.

WHEREFORE, Plaintiff, Larry Frazier, respectfully requests this Honorable Court enter a judgment in his favor and against Defendants, as follows:

    a.    Compensatory and special damages in an amount to be proved at trial;

    b.    An order requiring Defendant to provide Plaintiff with proper medical care, including possible surgery, to treat his condition;

    c.    An order enjoining Defendants and all other persons in concert or participation with it from denying Plaintiff proper medical care for his condition;

    d.    Reasonable costs of suit, including expert fees and attorney's fees; and

    e.    Any and all relief this Court may deem just and appropriate.

## Count IV – Malpractice

(Against CGH)

93. Plaintiff restates and realleges Paragraphs 1 through 47 as Paragraph 93.

94. Defendant CGH, through its employees and/or apparent agents Dr. Kermit Cox, Dr. Thomas King, and/or nurse Anja McNeill, owed a duty to Plaintiff to use the degree of skill and care of a reasonable healthcare professional when attaching the grounding pad to Plaintiff's back prior to operating on him.

95. Defendant CGH, through its employees and/or apparent agents Dr. Kermit Cox, Dr.

Thomas King, and/or nurse Anja McNeill, breached the duty owed to Plaintiff in one or more of the following ways:

   a. Failing to properly attach the grounding pad to Plaintiff's body prior to and during surgery;

   b. Failing to monitor the grounding pad to ensure it remain securely attached to Plaintiff's body prior to and during surgery; and

   c. Failing to properly diagnose and treat Plaintiff's burn.

96. As a direct and proximate cause of the afore-mentioned acts or omissions of Defendant CGH, as alleged above, Plaintiff incurred severe injury, pain, suffering, permanent injury, disability, and disfigurement.

97. Plaintiff has been significantly damaged by Defendant's negligence.

WHEREFORE, Plaintiff, Larry Frazier, respectfully requests this Honorable Court enter a judgment in his favor and against Defendants, as follows:

   a. Compensatory and special damages in an amount to be proved at trial; and

   b. Any and all relief this Court may deem just and appropriate.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY FOR ALL COUNTS**

Dated: May 6, 2021.              Respectfully submitted,

                                 By:   /s/ Vincent C. Mancini
                                       Attorney Assigned to Represent Plaintiff,
                                       Larry Frazier

FORNARO LAW
1022 South LaGrange Road
LaGrange, Illinois 60525
708.639.4320 - Telephone
708.390.0665 – Facsimile
Attorney No. 6243417
vince@fornarolaw.com